324 So.2d 625 (1975)
AB CTC, a Swedish Corporation, Petitioner,
v.
Victoria MOREJON, Respondent.
No. 45903.
Supreme Court of Florida.
July 24, 1975.
Rehearing Denied January 27, 1976.
*626 David Yelen, Yelen & Yelen, Coral Gobles, for petitioner.
Norman S. Segall, High, Stack, Davis & Lazenby, Miami, for respondent.
ADKINS, Chief Justice:
Conflict is the basis for our jurisdiction. Fla. Const., Article V, § 3(b) (3), F.S.A. 1973. In Foley v. Weaver Drugs, Inc., 177 So.2d 221 (Fla. 1965), we held that this Court may review by conflict certiorari a per curiam affirmance without opinion where an examination of the record proper discloses the legal effect of such per curiam affirmance is to create conflict with a decision of this Court or another District Court of Appeal. Under the provisions of Fla. Const., Article V, § 3(b)(3), F.S.A., as amended in 1973, a direct conflict with decisions of the same District Court of Appeal vests this Court with jurisdiction.
Where, as here, the per curiam affirmance without opinion could have been based on more than one statute, the petitioner must show that a conflict would be created between the decision sub judice and a decision of a District Court of Appeal or of the Supreme Court, regardless of which statute may have been the basis for the decision sub judice. Since petitioner has shown that the decision sub judice had to be based on either Fla. Stat. § 48.181 or § 48.182, and such decision if based upon § 48.181 would conflict with Fawcett Publications, Inc. v. Rand, 144 So.2d 512 (Fla. 3d DCA 1962), and if based upon Fla. Stat. § 48.182, would conflict with Gordon v. John Deere Co., 264 So.2d 419 (Fla. 1972), we have conflict jurisdiction.
Respondent filed a complaint against petitioner and Bermil Industries for damages as a result of an accident occurring in 1971. The accident, which resulted in serious personal injury to respondent, was alleged to have been caused by the negligent and careless manufacture of a washing machine by petitioner. Service of process on petitioner was attempted by substitute service of process on the Secretary of State.
Petitioner moved to dismiss and to quash based upon lack of jurisdiction over the person. Petitioner's motion to dismiss was supported by an affidavit of its director, wherein it was declared that petitioner is a Swedish corporation having its offices in Sweden; that petitioner does not conduct business in the United States; that all sales are made in Sweden to its distributor, Bermil Industries, an independent contractor, and sent by petitioner to Bermil Industries F.O.B. Gothenburg, Sweden; that the washing machine in question was sold to Bermil Industries in 1968.
The trial court permitted respondent to incorporate into this record the record of a prior law suit including affidavits, depositions, and trial testimony. The facts therein revealed that petitioner shipped all of its products, including the washing machine in question, to Bermil Industries, the exclusive representative of petitioner in the United States. Furthermore, a service manual printed in Sweden in the English language was delivered by petitioner to Bermil Industries for distribution with the machines in the United States. Bermil Industries sent the washing machine in question to Laundry Equipment Company in Florida. In 1969 the machine was sold in Florida by Laundry Equipment Company to Washwell, Inc., a laundromat. Respondent sustained personal injuries while using the washing machine in the laundromat in April, 1971.
The motion to dismiss for lack of jurisdiction over the petitioner was denied. An interlocutory appeal was taken and the Third District Court of Appeal by a two to one vote per curiam affirmed without opinion.
In Dinsmore v. Blumenthal, 314 So.2d 561, opinion filed May 21, 1975, this Court adopted the views expressed in Fawcett Publications, Inc. v. Rand, supra, requiring *627 control by the nonresident defendant over brokers, jobbers, wholesalers or distributors, or control over the personal property in the hands of brokers, jobbers, wholesalers or distributors, before a nonresident can be held to be doing business in this State through brokers, jobbers, wholesalers or distributors, pursuant to Fla. Stat. § 48.181(1) or § 48.181(3).
One seeking to effect substituted service of process under a long-arm statute has the burden of presenting facts which clearly justify the applicability of the statute. Fawcett Publications, Inc. v. Rand, supra. In the record before this Court, respondent failed to prove that petitioner exercised any control over the brokers, jobbers, wholesalers or distributors, or any control over the washing machine in the hands of the brokers, jobbers, wholesalers or distributors. The decision sub judice conflicts with Fawcett Publications, Inc. v. Rand, supra, and Dinsmore v. Blumenthal, supra.
Whereas a parent company has "control" over a subsidiary, a manufacturer does not necessarily have "control" over a sole distributor. Fla. Stat. § 47.16(2) [now § 48.181(3)] was enacted as a legislative response to Berkman v. Ann Lewis Shops, Inc., 246 F.2d 44 (2d Cir.1957) affg., 142 F. Supp. 417 (S.D.N.Y. 1956), wherein it was held that Fla. Stat. § 47.16(1) [now § 48.181(1)] was inadequate to serve as a basis to assert jurisdiction in this State over a parent company whose subsidiary was doing business in this State.
We do not hold that respondent cannot, by appropriate proof, meet its burden of proof to show applicability of Fla. Stat. § 48.181(1) or § 48.181(3). We merely hold that respondent has failed to do so. Upon a proper showing, respondent should be afforded a further opportunity to attempt service.
Having reached the conclusion that petitioner failed to sustain the propriety of substitute service pursuant to § 48.181, we must decide whether petitioner is subject to jurisdiction under § 48.182 which provides:
"48.182 Service on nonresidents committing a wrongful act outside the state which causes injury within the state.  Any nonresident person, firm, or corporation who in person or through an agent commits a wrongful act outside the state which causes injury, loss, or damage to persons or property within this state may be personally served in any action or proceeding against the nonresident arising from any such act in the same manner as a nonresident who in person or through an agent has committed a wrongful act within the state. If a nonresident expects or should reasonably expect the act to have consequences in this state, or any other state or nation and derives substantial revenue from interstate or international commerce he may be served; provided that, if such nonresident is deceased, his executor or administrator shall be subject to personal service in the same manner as a nonresident; provided further that this section shall not apply to a cause of action for defamation of character arising from the act."
In Gordon v. John Deere Co., supra, this Court held that Fla. Stat. § 48.182, enacted in 1970 and having an effective date of July 1, 1970, could not be applied retroactively to allow service under its provisions as to an alleged wrongful act committed prior to the enactment of the statute.
The issue as to the applicability of Fla. Stat. § 48.182 centers around the date of the wrongful act, to-wit: the negligent manufacture of the washing machine and the breach of implied warranty of merchantability. Petitioner argues that any wrongful act on its part occurred in 1968, the date the washing machine was manufactured. Since the alleged wrongful act occurred two years prior to the effective date of Fla. Stat. § 48.182, petitioner argues the use of Fla. Stat. § 48.182 would be retroactive, *628 and the decision sub judice if based on § 48.182, would conflict with Gordon v. John Deere Co., supra.
Respondent contends that the wrongful act in a breach of warranty case occurs at the time of injury. Since the statute became effective in 1970 and the injury occurred in 1971, respondent argues the statute was not being applied retroactively in violation of this Court's decision in Gordon v. John Deere Co., supra.
Assuming only for the purpose of this opinion that an implied warranty was associated with the washing machine manufactured by petitioner in Sweden, the question arises when the breach of warranty occurred. On this question, Florida law is controlling.
Fla. Stat. 672.725(2) states that:
"... A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered."
Since the breach of warranty occurs when tender of delivery is made, and since the tender of delivery of the washing machine occurred prior to the enactment of the statute and prior to its effective date, the use of § 48.182 to obtain jurisdiction over the petitioner would be retroactive, in violation of this Court's holding in Gordon v. John Deere Co., supra.
Although we hold that the wrongful act, the breach of warranty, occurred when tender of delivery was made, we do not recede from our holding in Creviston v. General Motors Corp., 225 So.2d 331 (Fla. 1969) that, where warranty attaches to sale of a product, the cause of action does not accrue and the statute of limitations does not commence until the breach of warranty in the form of a defective product is or should be discovered.
Accordingly, the decision sub judice is quashed and this cause is remanded to the District Court of Appeal so that same may be further remanded to the trial court for further proceedings consistent herewith.
It is so ordered.
ROBERTS and BOYD, JJ., and WELLS, Circuit Judge, concur.
ENGLAND, J., dissents with an opinion with which OVERTON, J., concurs.
ENGLAND, Justice (dissenting).
I dissent from the majority's jurisdictional determination. In 1965, this Court decided that it would accept for "conflict" jurisdiction those orders of the district courts which are rendered without opinion. Foley v. Weaver Drugs, Inc., 177 So.2d 221 (Fla. 1965). Recent requests for the exercise of our jurisdiction in that class of cases, and this case in particular, suggest that we should pause to reflect on the effect of our 1965 decision in light of the experiences gained during the past ten years.[1] There are several features of this case which make it particularly suitable to re-examine the foundations of Foley.
The "decision" which we are asked to review in this case is nothing more than the word "affirmed" entered by two of three district court judges. The order of the trial court which they affirmed reads, in its decisional portion, as follows:
"Ordered and Adjudged the Defendant's, AB CTC, Motion to Dismiss and *629 Quash be, and the same is hereby denied, and Defendant, AB CTC, is given ten days from the date of this Order within which to file its answer."
On their face, these rulings offer no justification for an analysis by this Court of the application or scope of Florida's two long-arm statutes. On the basis of Foley, however, we are invited to go behind the trial court's order in order to find something in the "record proper" which not only conflicts with other appellate decisions in Florida, but which also suggests the need for us to exercise our discretionary jurisdiction.[2] The documents that are alleged to be available for our consideration are the original complaint, the defendant's motion to dismiss with accompanying affidavit, the trial court's order granting plaintiff the opportunity to incorporate into the trial court record portions of a trial transcript and other evidence from a different, prior lawsuit, and that other testimony and evidence itself. These last items appear only as appendices to petitioner's briefs to this Court and to the district court. These are the source documents by which the majority finds "direct conflict"[3] with other appellate decisions.
These source documents, even if acceptable elements of the "record proper" (which they are not), provide absolutely no basis to find the requisite "direct conflict" with either the Fawcett or Gordon cases on which the majority relies. Gordon merely held that the long-arm statute adopted in 1971 (one of the two statutes involved in this case) could not be used to effect service of process for an injury which occurred prior to its effective date. Fawcett merely held that the other long-arm statute requires control over the property which caused the injury and control over the distributor or broker who sold the property. The district court's opinion affirming the trial court's motion in this case, even if fully understood by the trial judge and attorneys in the circuit where the trial court's order was entered,[4] could not possibly pose such a conflict with Gordon or Fawcett as to require this court's harmonization or clarification.[5]
A more detailed analysis of the majority opinion reveals additional concerns. The facts brought out in the majority opinion with respect to control (the issue which creates alleged conflict with Fawcett) appear in the transcript testimony from a wholly different lawsuit which was made a part of the trial court's record by court order and which is offered to us in the appendix to petitioner's brief. On the basis of that "record proper", the majority has found a way to express its opinion on the applicability of one long-arm statute in a case which is not yet even at issue.[6]
There are other reasons present in this case which suggest the need for a complete re-evaluation of Foley. In this case the majority is constrained to find decisional conflict on both of two possible theories which could be embodied in the district court's decision to affirm without opinion. An analysis of the opinion indicates that it has ruled on each of the following areas of law.
(1) The majority finds as a fact that the plaintiff has not yet properly invoked Section 48.181(3), Florida Statutes, because the element of "control" has not been proved on the record before us. On *630 this point the majority does not change or clarify the law. It merely disagrees with one of two possible grounds on which the trial judge and the district court saw fit to deny a motion to dismiss and require further pleadings. Where is the compelling need for harmonization of the law between the affirmance below and Fawcett? Haven't we given the parties a third factual evaluation of preliminary pleadings?
(2) The majority assumes "only for the purpose of this opinion" that the washing machine carried an implied warranty. It then concludes that a breach of that assumed warranty occurs at the time merchandise is tendered. If the assumption is good only for the resolution of this case, and if the result of the assumption is the application of well-established precedent, what law have we clarified or harmonized?
(3) The majority has held that a breach of warranty occurred on tender of delivery, yet it refuses to recede from a 1969 decision which holds that the cause of action for breach of warranty does not accrue until the breach is or should be discovered. The "harmonization" of law in this portion of the decision is so obscure that I venture to say that it will spawn an entirely new round of litigation requiring clarification of the clarification.
Couple the foregoing with the struggles we have had and the confusion we have generated over the definition of "record proper",[7] and it becomes apparent that the time for re-evaluation of Foley is at hand. I am ready to do that now.
OVERTON, J., concurs.
NOTES
[1] The Foley decision itself reconsidered and reversed a seven year old precedent on this very issue. Lake v. Lake, 103 So.2d 639 (Fla. 1958).
[2] Sroczyk v. Fritz, 220 So.2d 908, 911 (Fla. 1969).
[3] Fla. Const. art. V, § 3(b)(3).
[4] See Foley v. Weaver Drugs, Inc., 177 So.2d 221, 230 (Fla. 1965).
[5] These are the two polestar considerations which justify our exercise of jurisdiction under Foley.
[6] The trial court's order denying a motion to dismiss required respondent to file an answer to the complaint.
[7] E.g., Gibson v. Maloney, 231 So.2d 823, 832-33 (Fla. 1970) (Thornal, dissenting). Without saying so, the majority has expanded the definition of "record proper" to include affidavits appended to trial motions and trial transcripts from a different proceeding which are exhibits in briefs.