391 So.2d 749 (1980)
MAC MILLAN-BLOEDEL, LTD., Appellant,
v.
Franklin Ernie CANADA and Fuller Lumber Company, Inc., Appellees.
No. 79-1472/T4-638.
District Court of Appeal of Florida, Fifth District.
December 24, 1980.
J. Scott Kirk, Orlando, for appellant.
Sidney H. Parrish, Winter Park, for appellees.
*750 SHARP, Judge.
Mac Millan-Bloedel, Ltd., a Canadian business organization, appeals the lower court's determination that it had personal jurisdiction over Mac Millan pursuant to section 48.181, Florida Statutes (1979), or section 48.182, Florida Statutes (1973).[1] The plaintiff, a carpenter, filed suit in 1977 for injuries he sustained when a 2" X 10' joist or scaffold manufactured by Mac Millan failed or gave way under him in 1972 because of its alleged "dry-rotted" condition. We affirm the lower court on the basis of section 48.182.
The pleadings and record at the time of the hearing on jurisdiction established that Mac Millan was a non-resident Canadian corporation, based in Canada, and that it engaged in extensive international commerce. It manufactured lumber products and shipped them throughout North America and abroad. Its wholly owned subsidiary, Mac Millan-Bloedel, Inc. (also a defendant in this case) did business in Florida, but the trial court concluded it was a separate entity from appellant, and it was not "controlled" by appellant. Mac Millan had no office or agents in Florida. The offending piece of lumber was sold by the appellant F.O.B. place of shipment outside Florida, to its subsidiary. The subsidiary took delivery of the lumber in Jacksonville and stored it in its warehouse. From there, the lumber passed into the stream of intrastate commerce where it ultimately (allegedly) caused the plaintiff's injuries in Florida.
Section 48.193, Florida Statutes (1979), apparently gives the best basis for asserting personal jurisdiction over the appellant in this case. It provides:
(1) Any person ... who personally or through an agent does any of the acts enumerated in this subsection thereby submits that person ... to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following:
.....
(f) Causes injury to persons or property within this state arising out of an act or omission outside of this state by the defendant, provided that at the time of injury either:
.....
2 Products, materials, or things processed, serviced, or manufactured by the defendant anywhere were used or consumed within this state in the ordinary course of commerce, trade, or use, and the use or consumption resulted in the injury.
.....
(3) Only causes of action arising from acts or omissions enumerated in this section may be asserted against a defendant in an action in which jurisdiction over him is based upon this section....
The appellant manufactured the allegedly defective lumber; its products were being used in Florida in the ordinary course of business; and the defective lumber allegedly caused the plaintiff's injury in Florida. However, it is well established that section 48.193 applies only to causes of action which accrued after its effective date: July 1973.[2] Since the plaintiff was injured in 1972, section 48.193 is not applicable.
Section 48.181 has no time application problems in this case, but it requires a finding that the non-resident party sought to be served was engaging in business in Florida, or was making intrastate sales directly in Florida or through jobbers it "controlled." This statute provides:
(1) The acceptance by any person or persons ... who are residents of any other state or country, ... of the privilege ... to operate, conduct, engage in, or carry on a business or business venture in the state, or to have an office or agency in the state, constitutes an appointment by the persons ... of the secretary of state *751 of the state as their agent on whom all process in any action ... arising out of any transaction or operation connected with or incidental to the business or business venture may be served... .
.....
(3) Any person ... which sells ... by any means whatsoever tangible or intangible personal property, through brokers, jobbers, wholesalers or distributors to any person, firm or corporation in this state shall be conclusively presumed to be operating, conducting, engaging in or carrying on a business venture in this state.
Interstate or international sales to persons in Florida, no matter how numerous and ongoing, do not establish engaging in business or a business venture in Florida for purposes of section 48.181,[3] unless the nonresident is shown to have "control" or to have exercised "control" over the person selling the goods in Florida.[4] Mac Millan's doing business through its Florida subsidiary is the sole element established in this record on that point. That is an insufficient basis to support a finding of "doing business" or "control" for purposes of section 48.181.[5]
We finally come to section 48.182, Florida Statutes (repealed 1973). It provided:
Any nonresident person ... who ... commits a wrongful act outside the state which causes injury, loss, or damage to persons or property within this state may be personally served in any action or proceeding against the nonresident arising from any such act... . If a nonresident expects or should reasonably expect the act to have consequences in this state or any state or nation and derives substantial revenue from interstate or international commerce ...
The record established that Mac Millan manufactured and sold a defective product (rotten lumber); the sale was in international commerce; injury to persons through the use of the product was foreseeable, in Florida or any other place the lumber was used; the lumber's defect caused the plaintiff's injury in Florida; and the appellant was shown, through unchallenged allegations in the complaint and through SEC reports and depositions, to have derived most of its revenues over the years from "international" commerce. Section 48.182 is applicable to give Florida personal jurisdiction over the appellant. Youngblood v. Citrus Association of N.Y. Cotton Exchange, Inc., 276 So.2d 505 (Fla. 4th DCA 1973).
Although not raised by the parties to this appeal, the application of section 48.182 to this case may appear anomalous because this statute was repealed effective July 1973 and the suit was not filed until 1977. However this result is necessary to avoid creating a span of time between the effective dates of section 48.182 and section 48.193, when no "Long-Arm" statute would be in effect. The Legislature repealed section 48.182 effective on the date section 48.193 took effect, obviously intending there would be no such "gap" period. However, judicial interpretation has limited section 48.193 to causes accruing after its effective date. Griffis v. J.C. Penney Company, Inc. To avoid this "gap" we conclude section 48.182 applies to all causes of action accruing while it was in effect.
COWART, J., concurs.
FRANK D. UPCHURCH, Jr., J., dissents with opinion.
FRANK D. UPCHURCH, Jr., Judge, dissenting:
I respectfully dissent. The only connection appellant had with Florida was that it sold lumber to a company in Florida. It exercised no control over or recommendations as to the use of that lumber. Lumber, by its very nature, varies in quality and *752 strength. This is recognized by the industry and lumber is graded according to quality. The lesser grades possess more defects. Many applications in construction do not require great structural strength and a piece that would not be suitable for the support of a load-bearing structure might be suitable for another function.
One of the elements which must be shown to bring a defendant within section 48.182, Florida Statutes, is that the defendant committed a wrongful act. Youngblood v. Citrus Assoc. of N.Y. Cotton Exch., Inc., 276 So.2d 505 (Fla. 4th DCA 1973). The sale of lumber of an inferior grade is not a wrongful act absent a showing that it was misrepresented.
The utilization of inferior grades of lumber in proper applications should be encouraged in the interests of conservation and economy. To require a company to come to Florida to defend under the facts of this case seems to me an unreasonable and unrealistic extension of the "long-arm" concept. Therefore, I dissent.
NOTES
[1] This interlocutory appeal was taken pursuant to Florida Rules of Appellate Procedure 9.130(a)(3)(C)(i).
[2] AB CTC v. Morejon, 324 So.2d 625 (Fla. 1975); Griffis v. J.C. Penney Co., Inc., 333 So.2d 503 (Fla. 1st DCA 1976). See Gordon v. John Deere Co., 264 So.2d 419 (Fla. 1972).
[3] American Baseball Cap, Inc. v. Duzinski, 359 So.2d 483 (Fla. 1st DCA 1978).
[4] Dinsmore v. Martin Blumenthal Associates, Inc., 314 So.2d 561 (Fla. 1975); Cooke-Waite Laboratories, Inc. v. Napier, 166 So.2d 675 (Fla. 2d DCA 1964).
[5] Volkswagenwerk v. McCurdy, 340 So.2d 544 (Fla. 1st DCA 1976).